IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DAVID YARBOROUGH,                          :
                                           :
                    Petitioner,            :
                                           :
        v.                                 :        Civil Action No. 20-1274-CFC
                                           :
ROBERT MAY, Warden, and                    :
ATTORNEY GENERAL OF THE                    :
STATE OF DELAWARE,                         :
                                           :
                    Respondents.           :

_____

David Yarborough. *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

_____

**<u>MEMORANDUM OPINION</u>**

September 26, 2023
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Pending before the Court is Petitioner David Yarborough's Petition and Amended

Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C § 2254 (" Petition").  (D.I. 3;

D.I. 8)  The State filed an Answer in opposition.  (D.I. 11)  For the reasons discussed,

the Court will deny the relief requested and dismiss the Petition.

I.      BACKGROUND

        A.  Arrest Through Sentencing[1]

         Relevant to the present matter, beginning in January of 2012, the following

occurred:

> • On January 25, 2012, [Petitioner] was arrested and charged
> with twenty-three (23) offenses including Theft Greater than
> $100,000, Burglary Second Degree, and Selling Stolen
> Property (the "Jan. 2012 Case").
>
> • On February 13, 2012, [Petitioner] was again arrested and
> this time charged with Burglary Second Degree, Theft of a
> Senior and Conspiracy Second Degree (the "Feb. 2012
> Case").
>
> • On October 9, 2012, [Petitioner] was arrested on two
> charges each of Attempted Theft and Insurance Fraud (the
> "Oct. 2012 Case"). This case was pending in Kent County.

After a series of substitutions of counsel, eventually, Adam Windett, Esquire

("Windett") was appointed to represent [Petitioner] in the Jan. 2012 Case, Feb. 2012

Case and Oct. 2012 Case.  However, due to a later conflict of interest (See Feb. 2014

Case summary below), John S. Malik, Esquire ("Malik") became counsel of record and

---

[1]This portion of Petitioner's background (Section I.A.) is taken verbatim from the
Delaware Superior Court's decision in Petitioner's Rule 61 proceeding.  *See State v.
Yarborough*, 2019 WL 4954959, at *1-3 (Del. Super. Ct. Oct. 2, 2019).

represented [Petitioner] beginning March 7, 2014 through the conclusion of these cases.

## February 2014 Arrest

While the above cases were pending, on February 20, 2014, [Petitioner] was arrested and eventually charged with two (2) counts each of Attempted Assault First Degree, Criminal Solicitation Second Degree, and Stalking (the "Feb. 2014 Case"). Essentially, while out on bail, [Petitioner] attempted to hire a "hitman" (an undercover police officer) to assault both his then defense attorney (Windett) and the prosecutor for one of the pending cases. During this solicitation, [Petitioner] indicated he only had available funds for one individual and an agreement was made for the hitman to attack [Petitioner's] former defense counsel so that he would be "permanently in a wheelchair." [Petitioner] was represented by Eugene J. Maurer, Esquire ("Maurer") in this case.

## [Petitioner's] Plea and Sentencing

On April 9, 2015, the [Superior] Court held a plea hearing at which time [Petitioner] was represented by both Malik and Maurer. The Plea Agreement resolved all four cases then pending before the [Superior] Court. [Petitioner] agreed to plead guilty to two charges of Attempted Assault First Degree and two charges of Burglary Second Degree. The Agreement further provided that [Petitioner] acknowledged he was eligible to be sentenced as a habitual offender [on the two second degree burglary charges] for certain 2009 and 2010 felony convictions but that the State would cap its recommendation at 20 years at Level V, which would be the minimum mandatory

2

sentence.  In addition, with respect to the Oct. 2012 Case,[2] the State agreed to vacate three of the convictions [two counts of attempted theft and one count of insurance fraud] and that [Petitioner] would be sentenced on a sole count of Insurance Fraud, with a recommended sentence of 2 years at Level V, suspended for probation.  Finally, with respect to restitution, the agreement states: "To be imposed for all victims at time of sentencing."  Both of [Petitioner's] counsel executed the Plea Agreement with him.

That same date, [Petitioner], with counsel, also signed the Truth-in-Sentencing ("TIS") Guilty Plea Form indicating that he was freely and voluntarily deciding to plead guilty to the charges listed in the Plea Agreement, that nothing was promised to him other than what was stated in the agreement, that no one (including his lawyer) forced him to enter the plea, and that by pleading guilty he was waiving certain constitutional rights. Through this process, [Petitioner] was put on notice that the four charges [two second degree burglary charges and two first degree assault charges] to which he plead guilty included a minimum mandatory of 20 years at Level V but the guidelines also allowed for a sentence of 50 years or two life sentences.

On June 1, 2015, the State filed a Motion to Declare [Petitioner] a Habitual Offender (the "HO Motion") pursuant to 11 Del. C. § 4214(a) and § 4215(b).  The HO Motion cited three previous convictions:

> (1) Identity Theft of a Senior, Cr. A. No. 0902019247
> Offense Date: On or about February 12, 2009
> Conviction and Sentence Date: June 16, 2009
>
> (2) Perjury Second Degree, Cr. A. No. 0909002817
> Offense Date: On or about July 20, 2009

---

[2]The Oct. 2012 case went to trial in Kent County in March 2015, after which a Superior Court jury found Petitioner guilty of all charges – two counts each of attempted theft and insurance fraud.  (D.I. 12-13 at Entry No. 53)

Conviction and Sentence Date: September 16, 2009

(3) Forgery Second Degree, Cr. A. No. 1005017858
Offense Date: On or about May 19, 2010
Conviction and Sentence Date: October 13, 2010

In July of 2015, the Office of Investigative Services prepared a Pre-Sentence Investigation Report ("PSI").

The [Superior] Court held a sentencing hearing on October 2, 2015, at which time Malik objected to the habitual offender designation on the basis that approximately 34 days had elapsed between two of the predicate convictions and therefore [Petitioner] was not afforded an opportunity for rehabilitation between sentencing and arrest for the subsequent offense. The issue was thoroughly argued at the hearing. However, everyone was also aware that the evidence against [Petitioner] in the February 2014 Case was "very, very strong" and that [Petitioner] was facing a 50-year minimum mandatory sentence. At the conclusion of the hearing, the Court reserved consideration of the legal authorities and arguments but expressed concern that despite having "two of the most experienced senior defense attorneys in the State of Delaware representing him..." [Petitioner] may not take their advice and jeopardize a favorable plea.

Several days later, the Court issued its decision granting the HO Motion. After consideration of the applicable legal authorities, the Court was satisfied that . . . [Petitioner] had sufficient time for rehabilitation. The Court stated:

> The court's discretion is largely informed by the subsequent
> offense's nature. Perhaps, for example, if [Petitioner] had
> been sentenced for a drug-related offense and 30 days later
> he committed another drug-related offense, it could be said
> that [Petitioner]'s rehabilitation turned on his receiving long-
> termed drug treatment, for which enough time had not

4

> elapsed. Here, again, [Petitioner] simply lied. Taking
> [Petitioner]'s criminal history leading up to his second,
> predicate offense and the subsequent perjury charge into
> account, the court is satisfied that the predicate offenses do
> not overlap and, under the present circumstances, [Petitioner]
> had an adequate opportunity for rehabilitation.

On December 10, 2015, the [Superior] Court held a continued sentencing hearing and the HO Motion was again granted and [Petitioner] was sentenced. At the hearing, [Petitioner] was once again represented by both Malik and Maurer. The hearing began with the Court questioning whether there was a "need to review and revisit any aspect of the plea agreement." Despite several months having passed since the [Superior] Court's ruling on the HO Motion, [Petitioner] did not raise any issues with respect to the plea. The [Superior] Court then acknowledged the habitual offender proceedings and found that "the prior convictions, that is, the predicate convictions have been carefully documented." After providing an opportunity to respond, defense counsel said there were no issues with respect to that matter and the [Superior] Court signed the order. Both defense counsel argued for the [Superior] Court not to impose more than the minimum mandatory consistent with the Plea Agreement. Finally, the State moved for restitution to be awarded in the amount of $237,816.00 and the [Superior] Court ordered joint and several liability for that obligation. [The Superior Court sentenced Petitioner on the attempted assault counts to an aggregate four-year term of incarceration and, as a habitual offender, to aggregate sixteen-year term of incarceration for the burglary counts. (D.I. 12-13 at 3 n. 8; D.I. 12-13 at 30-32)] After the sentence was imposed, [Petitioner] had an opportunity to address the [Superior] Court and he thanked both of his attorneys but did not contest the sentence or the amount of restitution awarded.

5

## B. Direct Appeal and Post-Conviction Proceedings

Petitioner appealed his sentence, arguing that the Superior Court should not have declared him a habitual offender because he did not have an adequate opportunity for rehabilitation between his predicate identity theft and perjury offenses. (D.I. 12-5) In September 2016, the Delaware Supreme Court affirmed the Superior Court's judgment. *See Yarborough v. State*, 148 A.3d 688 (Table), 2016 WL 5462440 (Del. Sept 28, 2016).

In October 2016, Petitioner filed *pro se* motions to correct sentence under Delaware Superior Court Criminal Rule 35, which the Superior Court denied on December 20, 2016. (D.I. 12-1 at Entry Nos. 122, 124; D.I. 12-12 at Entry Nos. 112, 113; D.I. 12-4 at Entry Nos. 56, 58) Petitioner did not appeal those decisions.

On January 17, 2017, Petitioner filed a *pro se* motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion to appoint counsel. (D.I. 12-23; D.I. 12-24) In August 2017, the Superior Court denied Petitioner's motion to appoint counsel but granted his request to amend his Rule 61 motion. (D.I. 12-26) Petitioner appealed the order, which the Delaware Supreme Court dismissed as an impermissible interlocutory appeal. *See Yarborough v. State*, 173 A.3d 538 (Table), 2017 WL 4857126, at *1 (Del. Oct. 26, 2017). Petitioner subsequently amended his Rule 61 motion several times. (*See* D.I. 8 at 54-57; D.I. 12-34; D.I. 12-35; D.I. 12-36) On October 2, 2019, a Superior Court Commissioner recommended that Petitioner's Rule 61 motion be denied because some claims were barred under Rule 61(i)(3) and others were barred under Rule 61(i)(4) and were otherwise meritless. *See Yarborough*, 2019 WL 4954959, at *4-5, 8. The Superior Court adopted the

6

Commissioner's Report and Recommendation and denied Petitioner's Rule 61 motion on April 21, 2020. *See State v. Yarborough*, 2020 WL 2026701 (Del. Super. Ct. Apr. 21, 2020). Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's decision on August 25, 2020. *See Yarborough v. State*, 238 A.3d 191 (Table), 2020 WL 5033422, at *1 (Del. Aug. 25, 2020).

Meanwhile, on October 9, 2019, Petitioner filed another *pro se* Rule 35 motion to correct sentence. (D.I.12-1 at Entry No. 123) The Superior Court denied the Rule 35 motion on January 30, 2020. *See State v. Yarborough*, 2020 WL 502386, at *3 (Del. Super. Ct. Jan. 30, 2020). The Delaware Supreme Court affirmed that decision on August 18, 2020. *See Yarborough v. State*, 238 A.3d 190 (Table), 2020 WL 5242442, at *1 (Del. Aug. 18, 2020).

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

7

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.  § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).  The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct.  *See* § 2254(e)(1).  This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary.  *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S.

322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

The sole Claim in the instant Petition asserts that Malik provided ineffective assistance ("IATC") by erroneously advising Petitioner that the State's motion to declare him a habitual offender would not be granted.[3]  Petitioner contends that this incorrect advice caused him to enter a guilty plea.  Petitioner asks the Court to order the Superior Court to resentence him as a nonhabitual offender.  (D.I. 3 at 5, 15)

The record reveals that Petitioner presented the instant IATC Claim to the Superior Court in his Rule 61 motion.  The Superior Court Commissioner ("Commissioner") concluded that, "although couched as ineffective assistance of counsel claims, [all of Petitioner's claims] take issue with the [Superior] Court's decision to grant the Habitual Offender Motion."  *Yarborough*, 2019 WL 4954959, at *5. Consequently, the Commissioner ruled that, to "the extent [Petitioner] is attempting to

---

[3]Petitioner presented his Claim on the § 2254 habeas form as follows:

> Double Jeopardy, Habitual Offender, Ineffective Assistance of Counsel Lawyer gave incorrect advice that caused me to plead guilty as a habitual. Lawyer gave same advice to family.

(D.I. 3 at 5)  Petitioner subsequently filed a 168-page document titled "amended petition," which consists of copies of documents filed in his state court proceedings. (D.I. 8)  Petitioner's cover letter for the amended petition asserts that the "amended § 2254 petition [] includes all grounds, but most specifically arguments pertaining to counsel's deficient representation and the Court illegally sentencing me as a habitual offender."  (D.I. 8-1 at 1)  Together, the habeas form petition and amended petition assert one claim: defense counsel provided ineffective assistance by providing incorrect advice about the likelihood of Petitioner being sentenced as a habitual offender.

seek reconsideration of that issue, any such arguments are barred by Super. Ct. Crim. R. 61(i)(4)" for being formerly adjudicated. *Id.* at *4. The Commissioner also concluded that Petitioner failed to establish ineffective assistance. *Id.* at *5.

The Superior Court adopted the Commissioner's Report and Recommendation to the extent it recommended the denial of Petitioner's claims as barred under Rule 61(i)(4). *See Yarborough*, 2020 WL 2026701, at *2. The Delaware Supreme Court affirmed the Superior Court's judgment "on the basis of and for the reasons assigned by the Superior Court's order … adopting the Commissioner's Report and Recommendation." *Yarborough*, 2020 WL 5033422, at *1.

The State contends that the Delaware state courts' application of Rule 61(i)(4) to the instant Claim demonstrates that the Claim is procedurally barred from habeas review. The Court disagrees. Although a formerly adjudicated claim barred by Rule 61(i)(4) is defaulted for Delaware state court purposes, on federal habeas review the fact that the claim was formerly adjudicated means that it was decided on the merits. *See Cone v. Bell*, 556 U.S. 449, 466 (2009) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review."). Thus, the Court must review the Claim under § 2254(d), which means Petitioner will only be entitled to relief if the Delaware Superior Court Commissioner's[4] denial of the Claim was either contrary to, or an unreasonable

_____

[4]The Superior Court Commissioner's Report and Recommendation dated October 2, 2019 is the last state court decision containing a reasoned analysis. Consequently, the Court references the Commissioner's October 2, 2019 decision when analyzing Petitioner's instant ineffective assistance of counsel argument under § 2254(d). *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas

application of, clearly established federal law, or was based on an unreasonable determination of the facts adduced in light of the evidence presented.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Further, it is well settled that "[s]olemn declarations in open court carry a strong presumption of verity" and create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

A court may choose to address the prejudice prong before the deficient performance prong, and may reject an ineffectiveness claim solely on the ground that

---

law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment); *Y1st v. Nunnemaker*, 501 U.S. 797, 804 (1991) (under the "look through" doctrine, "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

the movant was not prejudiced.  *See Strickland*, 466 U.S. at 668.  Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable.  *See id.* at 689.

The Commissioner rejected the instant IATC Claim after concluding that Petitioner failed to satisfy both prongs of the *Strickland/Hill* standard.  In addressing the performance prong, the Commissioner reviewed the plea agreement, Truth-in-Sentencing Form, plea hearing transcript, and Malik's Rule 61 affidavit.  The Commissioner noted that Malik's affidavit "clearly refutes" Petitioner's allegations, found that Petitioner was bound by the statements he made during the plea colloquy, and further concluded that "nothing in the record" supported Petitioner's allegation that Malik misled him about the habitual offender motion.  *Yarborough*, 2019 WL 4954959, at *5.  The Commissioner therefore held that counsel's actions did not fall below an objective standard of reasonableness.  *Id.*  When addressing the prejudice prong, the Commissioner determined that Petitioner failed to demonstrate that he would have "achieved a more favorable result" if he had gone to trial.  *Id.* at *8.

Turning to the first prong of the § 2254(d)(1) inquiry in this proceeding, the Court notes that the Commissioner correctly cited *Strickland* and correctly identified the *Hill* standard[5] as both governing Petitioner's instant IATC argument.  *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own

---

[5]The Commissioner cited *Albury v. State*, 551 A.2d53, 59 (Del. 1988) which, in turn, cites *Strickland* and *Hill*.

state court cases which articulated the proper standard derived from Supreme Court precedent). Although the Commissioner did not cite *Blackledge* directly when denying the instant IATC claim, the Delaware case[6] cited by the Commissioner refers to the applicable Federal precedent. Given these circumstances, the Commissioner's decision was not contrary to clearly established federal law.

The Court must also determine if the Commissioner reasonably applied the *Strickland/Hill* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Commissioner's denial of Petitioner's IATC allegation through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

**A. Trial Counsel's Performance**

After reviewing the record, the Court first concludes that the Commissioner reasonably determined the facts when finding no support for Petitioner's assertion that Malik misled him. The Court addresses the relevant parts of the record *in seriatim*.

---

[6]*Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

### 1. Plea colloquy

Petitioner acknowledged in his written plea agreement that: (1) he was eligible to be sentenced as a habitual offender; (2) the State would file a habitual offender motion; and (3) the State would cap its sentence recommendation at 20 years at Level V, "which would be the minimum/mandatory sentence." (D.I. 12-19 at 1)  Petitioner's Truth-in-Sentencing form also shows that Petitioner knew and agreed that: (1) he could be sentenced to serve life imprisonment as a habitual offender; (2) he faced a minimum mandatory 20-year sentence; (3) he was not promised anything not stated in the plea agreement; and (4) he was not forced to plead guilty. (D.I. 12-19 at 2)  During the plea colloquy, the State informed the Superior Court, Petitioner, and defense counsel that the "State will file an habitual offender motion prior to sentencing on the Kent County indicted case IK12020940, burglary in the second degree, and in the Kent County indicted case number 12020395, burglary in the second degree.  The State will cap its sentencing recommendation at 20 years Level V, which would be the minimum mandatory sentence." (D.I. 16-1 at 6)  Also during the plea colloquy, after Petitioner stated he was guilty of the charges and understood the associated statutory penalties, the Superior Court asked, "With respect to your guilty plea form, have you given correct answers to all the questions on this form?" (D.I. 16-1 at 14)  Petitioner answered, "Yes, I have, Your Honor." (*Id.*)

Petitioner has not provided any compelling evidence in this proceeding as to why the statements he made during the plea colloquy should not be presumptively accepted as true.  Thus, Petitioner is bound by the representations he made during the plea colloquy and on the Truth-in-Sentencing form concerning the adequacy of Malik's

performance, the voluntariness of his plea, his awareness that the State planned on filing a habitual offender motion, and his understanding that he faced a minimum mandatory 20-year sentence and a possible life sentence.

### 2. Assertions in Rule 61 proceeding

The statements Petitioner made in his Rule 61 proceeding—recited below in Petitioner's own words—contradict his current assertion about being misled and demonstrate his understanding that Malik was suggesting a possible challenge to the State's habitual offender motion rather than an assurance or prediction that the State's habitual offender motion would fail.

> 1. Although **I knowingly and voluntarily entered this plea, I was strongly under the impression** from Mr. Malik that the State would be unsuccessful in declaring me a habitual offender because of the short time between my felony convictions. He lied to me. (D.I. 12-28 at 19-20) (emphasis added)
>
> 2. [P]rior to the Case Review Hearing [] attorney John S. Malik advised the family members of [Petitioner] that he had previously spoke to [Petitioner] and advised him to plead guilty to two counts of Burglary Second Degree and two counts of Attempted Assault First Degree. Also, that the State was seeking to declare [Petitioner] a habitual offender on the Burglary second charges only. Mr. Malik said that the State would be unsuccessful in declaring David a habitual offender due to the short time period between David's 2009 convictions. "**At the time of David's sentencing, we will argue** that only 34 days passed between his Identity Theft of a Senior and Perjury charges and that is not enough time for rehabilitation. The [c]ourts will have to sentence [Petitioner] without the habitual offender status," Mr. Malik said. (D.I. 12-39 at 1-2)
>
> 3. [Petitioner] accepted this plea at the advice of Counsel. **Petitioner was confident that Counsel's argument would prevail at sentencing** and he would not be declared a Habitual Offender. (D.I. 8 at 80)

15

> 4. [Petitioner] does not dispute his conviction, but does
> dispute that his conviction should not [sic] be with the Habitual
> Offender assignment.  (D.I. 8 at 87)

The fact that Petitioner phrases his perception of the situation as "strongly under the

impression" while also acknowledging Malik's statement about needing to **argue** against

the motion during the future sentencing hearing demonstrates Petitioner's awareness

that there was no guarantee that the argument would be successful.

### 3.  Counsel's Rule 61 affidavits

The Rule 61 affidavits provided by Malik and Maurer present consistent

descriptions of the communications they had with Petitioner concerning the State's

motion to declare him a habitual offender, and their versions contradict Petitioner's

story.  Malik represented Petitioner for the charges in his January 2012 case (23

offenses including theft, second degree burglary, and selling stolen property), the

charges in his February 2012 case (second degree burglary, theft, and second

degree conspiracy), and the charges in his October 2012 case (two charges each of

attempted theft and insurance fraud).  In his Rule 61 affidavit, Malik asserts:

> 13. During the plea negotiations and the execution of the plea
> Trial Counsel met with [Petitioner] on numerous occasions to
> discuss plea negotiations, the State's intention to have him
> declared a habitual offender, and how that impacted his
> sentence.  [Petitioner's] plea offer resulted in the dismissal of
> several charges which resulted in a substantial reduction of
> the total sentence to which he would have been exposed if
> convicted and if the State moved to have him declared an
> habitual offender.  When counsel explained the benefit of the
> plea offer, the arguments for and against [Petitioner] being
> declared an habitual offender, the risk of conviction on all
> charges, and [Petitioner] facing an habitual offender petition,
> [Petitioner] elected to reduce his risk of exposure to a
> sentence three times more than his current sentence and

accept the State's plea offer. **When he chose to accept the plea, [Petitioner] was aware that there was no guarantee that the [Superior] Court would accept the argument that Trial Counsel had suggested relating to his status as an habitual offender.** This argument would have been presented regardless of whether [Petitioner] chose to accept the plea or go to trial. Rather, **trial counsel explained that there was a good faith basis to contest the State's motion** to declare him an habitual offender because he did not have sufficient time to rehabilitate as argued on appeal to the Delaware Supreme Court.

14. In fact, **counsel advised [Petitioner] that he could [] jeopardize the plea if here were to oppose the petition to have him declared a habitual offender. Therefore, counsel for [Petitioner] contacted the State prior to opposing the habitual offender petition to ensure it would not jeopardize the State's plea offer.**

(D.I. 12-12 at 78-80) (emphasis added)

Maurer represented Petitioner for the charges in his February 2014 case

(attempted first degree assault, second degree criminal solicitation, and stalking). In

his Rule 61 affidavit, Maurer asserts:

4. On March 21, 2015, counsel met with [Petitioner] at the James T. Vaughn Correctional Center in Smyrna and went over with him very carefully the Plea Offer that had been extended to him. In connection with the charge on which counsel was representing him, the State had extended a Plea Offer that would carry with it a 20-year prison term and [Petitioner] was satisfied, although not happy, with that offer. Counsel did discuss with [Petitioner] with ramifications of the plea and also discussed with him, in part, how the Habitual Offender Statute operated. At the time, John Malik, Esquire, was representing [Petitioner] on unrelated burglary and other offenses and [Petitioner] wanted counsel and Mr. Malik to go back to the prosecutor to see whether the prosecution would accept a plea to a 20-year prison term that would not be a habitual offender sentence.

5. Thereafter, counsel communicated with the Prosecutor's Office in an effort to see whether the State would consider offering a plea without requiring a habitual offender

17

designation. The prosecution was unwilling to go along with such a recommendation. Ultimately, [Petitioner] entered a plea of guilty on March 24, 2015 to two counts of Attempted Assault in the 1st Degree and two counts of Burglary in the second degree. In that Plea Agreement, the State indicated that they would file a Habitual Offender Motion on the charges of Burglary in the 2nd Degree and would cap its recommendation at 20 years. There were also provisions in the Plea Agreement relating to convictions that had previously taken place in Kent County [*i.e.* the October 2012 case]. […]

6. Although the State was not seeking habitual offender treatment with respect to the charges on which this counsel represented [Petitioner], **counsel nevertheless had an opportunity to speak with [Petitioner] and discuss with him the habitual offender petition that the State was going to bring in connection with the burglary charges on which Mr. Malik was representing [Petitioner]. Counsel at no time advised [Petitioner] that he could not be declared a habitual offender because an insufficient amount of time had gone by between convictions so as to preclude the applicability of the Habitual Offender Statute.**

(D.I. 12-38 at 2-3)

### 4. Sentencing hearing transcripts

The transcript from the first sentencing hearing on October 2, 2015 provides a more complete picture of the communications that occurred between Malik, Maurer, and Petitioner prior to entering his plea. During the October 2, 2015 sentencing hearing, the State asked the Superior Court to rule on the habitual offender motion it had filed in May 2015. (D.I. 12-13 at 9) Malik objected to the habitual offender motion on the basis that the 34-day period between Petitioner's identity theft conviction on June 16, 2009 and his second degree perjury arrest on July 20, 2009 was an insufficient amount of time for rehabilitation to take place. (*Id.*) The Superior Court asked if this issue had been discussed "between parties at the time of the plea agreement," and the State responded that "no, it was not […] the first the State heard of this was about 15 minutes ago." (*Id.*)

Malik explained that "[Petitioner] brought this issue up this afternoon. **He asked me to bring it up, which I did**." (D.I. 12-13 at 10-11) (emphasis added)  At that point, Maurer stated:

> If I might chime in, Your Honor, for a moment. I'm on the other part of the case. The problem here was that had [Petitioner] gone to trial and been convicted of the Attempted Assault First charges – the evidence against him was very, very strong in the case – he was looking at a 50-year minimum mandatory sentence. We reached this plea agreement **and I just very briefly said to him that if this issue is pursued, it is entirely possible the State might want to vacate the plea offer that was extended previously.** And he seems a little bit confused right now about the whole situation.

(D.I. 12-13 at 11) (emphasis added)  The Superior Court deferred deciding the habitual offender motion and Petitioner's sentencing, stating: "before imposing a sentence that's likely to result in 20 years in prison, I might as well look at those cases [referenced by the State]." ( *Id.* at 12)  Seven days later, in a written letter order dated October 9, 2015, the Superior Court granted the State's motion to declare Petitioner a habitual offender. (D.I. 12-13 at 15)

The sentencing hearing resumed on December 10, 2015. During the December hearing, the Superior Court asked if it needed to review any aspect of the plea agreement. (D.I. 12-13 at 18)  Malik responded that the defense was executing a stipulation dismissing most of the charges related to Petitioner's convictions in his insurance fraud case, but did not mention any other aspect of the plea agreement that the Superior Court needed to revisit. (D.I. 12-13 at 18-21)  The Superior Court signed an order granting the State's habitual offender motion and, in accordance with the plea agreement's sentence recommendation, sentenced Petitioner to an aggregate term of twenty years at Level V (16 years total as a habitual offender for the burglary counts

19

and eight years total for the attempted assault counts).  (D.I. 12-13 at 30-33)  The fact that Malik did not seek to revisit the plea agreement **after** the denial of the habitual offender motion strongly suggests that Petitioner opted to not pursue the motion and, relatedly, opted not to risk having the plea agreement vacated.

In all, this record shows:  (1) Petitioner voluntarily entered a guilty plea and understood the minimum mandatory sentence he faced under the plea was 20 years imprisonment with a potential maximum sentence of life imprisonment (D.I. 16-1 at 13); (2) Petitioner voluntarily and truthfully stated in his plea agreement and TIS form that he was not forced into entering the guilty plea or promised anything with respect to his sentence, and he understood the State was planning to file a motion to declare him a habitual offender (D.I. 12-19; D.I. 16-1 at 6, 14); (3) Malik informed Petitioner that he could potentially object to the habitual offender motion on the ground that there was an insufficient amount of time for rehabilitation between the predicate offenses (D.I. 12-12 at 79), and Maurer informed Petitioner – in part – how the habitual offender statute worked and explained the habitual offender motion the State planned to file (D.I. 12-38 at 2-3); and (4) both Malik and Maurer independently informed Petitioner that pursuing the objection to the habitual offender motion could jeopardize his plea agreement and result in the State seeking to vacate that agreement. (D.I. 12-12 at 79-80; D.I. 12-13 at 11)

### 5.  Conclusion

Given the aforementioned record, the Court concludes that the Commissioner reasonably determined the facts in light of the evidence presented when rejecting as unsupported Petitioner's allegation that Malik misled him or promised a certain result

with respect to the State's habitual offender motion.  In reaching this conclusion, the Court ascribes particular significance to Petitioner's failure to accept the Superior Court's "invitation" to review any aspect of the plea agreement during the second sentencing hearing despite having been declared a habitual offender.  Based on this factual determination, the Court further concludes that the Commissioner reasonably applied *Strickland* when holding that Malik's statements concerning the State's habitual offender motion did not constitute deficient performance under *Strickland* and *Hill*.

### B. Prejudice

The Court further concludes that the Commissioner reasonably applied the *Strickland/Hill* standard when finding that Petitioner failed to demonstrate prejudice. Petitioner faced a potential mandatory minimum sentence of 50 years for the attempted assault charge if he was convicted at trial and sentenced as a habitual offender on those charges.  *See* 11 Del. C. §§ 531, 613(c), 4205(b)(2), 4214(a).  The State agreed to cap its recommendation to the minimum mandatory sentence of 20 years (eight years as to each second degree burglary conviction, and two years as to each attempted first degree assault conviction).  (D.I. 12-19 at 1)  The State further agreed to vacate Petitioner's prior March 2015 convictions on three charges and to proceed to sentence on a sole count of insurance fraud.  (*Id.*)  Maurer, who represented Petitioner on the attempted assault charges (*i.e.*, the February 2014 case), believed that there was substantial evidence of Petitioner's guilt.  (*See* D.I. 12-13 at 11)  The Commissioner also noted that the evidence in the February 2014 case "was strong" and included (1) a video of Petitioner attempting to solicit a hitman to harm his former attorney, and (2) "a post-*Miranda* statement from [Petitioner] confessing to trying to hire someone to

21

seriously injure either his attorney or the prosecutor." *Yarborough*, 2019 WL 4954959, at *8. And finally, during his plea colloquy, Petitioner himself acknowledged the benefit he was deriving by pleading guilty when he said, "I understand twenty years is a lengthy period of time. And ultimately I think I made the right decision." (D.I 16-1 at 16)

In sum, considering the strength of the case against him and the substantial additional punishment Petitioner faced if he proceeded to trial, Petitioner cannot demonstrate a reasonable probability that he would have proceeded to trial but for Malik's alleged assurance that the State's motion to declare him a habitual offender would fail. Again, the Court finds significant support for this conclusion in Petitioner's statements during his plea colloquy demonstrating his awareness of—and satisfaction with—the benefit obtained by pleading guilty, and his failure to revisit the plea agreement during the second sentencing hearing despite having been declared a habitual offender.

For these reasons, the Court concludes that the Commissioner reasonably applied the *Strickland/Hill* standard when denying Petitioner's instant IATC Claim. Accordingly, the Court will deny the Petition for failing to satisfy § 2254(d).

## IV.    CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, if a federal court denies a habeas petition on procedural

grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition fails to warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed above, the Court will deny the instant Petition without an evidentiary hearing.

The Court will issue an Order consistent with this Memorandum Opinion.